Good morning everyone. We have six arguments on today's calendar. We'll begin with Appeal Number 22-2708 Consolidated Grain and Barge v. the Indiana Port Commission. Mr. Shaw, nice to see you. Good morning. May I proceed? You may. Your Honors, may it please the court, my name is Cal Shaw and I have the privilege today of representing the good people at Consolidated Grain and Barge. With me today is General Counsel Jonathan Sandoz from Consolidated Grain and Barge. I'd like to reserve five minutes for rebuttal if I may. Your Honors, the question, the central question before the court this morning is whether the district court erred in determining that a singular notwithstanding clause in a 2008 agreement essentially eliminated the entirety of the provision in the 2001 agreement to which it refers. If I could interrupt very early, I presume you're going to go through the various documents and we've all read them. I think it would be helpful to us if at the beginning we understood your end point. If you had to go in, you win this and they're going to say to you, how do we operate? What's the answer? What are you, what's the point of all this litigation? What, how do you want to operate? Thank you, Your Honor. Tell us that, we may be able to understand how all these documents hang together. Absolutely, Your Honor. So the way we'd like to operate is the way that we operated up to and through 2021, which was pursuant to the was operating and switching, if you will, its own cars and the cars for the remainder of the tenants at the port and also performing maintenance, that's snow removal, repair of the tracks at the court. So you want to do your own switching? Yes, Your Honor. Do you want to do the switching for all the other tenants? Not necessarily, Your Honor. We're more than happy, in fact, that's a burden that we took on in order as part of the consideration to get into the 2001 settlement agreement, is that the port at that time did not want to do it switching, so we consolidated, agreed to take it on for the entirety of the port. Certainly there's no obligation and we don't necessarily need to do that. We continue to be willing to do that, but we don't, we're happy to co-live with whoever the third-party provider is for the remainder of the tenants. Again, I don't want to throw you too far off track, but at that point, I guess the you're asking for what judges sometimes call an H2SO4 result, you know, the piece, the language of the contract fits together, the result smells bad, sulfuric acid, okay? In other words, you're claiming that very rational business people sat down and decided that you could have two switching functions on the trackage in that port, is that right? Yeah, absolutely, Your Honor, and that's reflected in many of the documents and it's actually a factual reality at many ports across the country. Now, we didn't get through discovery, which is one of the issues that certainly would have come, make that come to light, but it's not uncomplicated or uncommon to have more than one switching service. In fact, if you take a look at the 2001 agreement, it suggests that that's a possibility in paragraph 5, but also the track use agreements, which are here, also make clear in several instances, and I'm happy to point those out, where there can be another provider. In fact, if you'll bear with me as I find it, the track uses agreement refer to, here let me just turn to the actual agreement, if you take a look at the 2006 track use agreement, Your Honor, which is document 9898 at 4, there is a provision that suggests that we cannot get in the way of anybody else wanting to use a track. So this is it, on page 198-4 in the record, it says CGB also recognizes the right of any tenant, owner, operator of property at the port to operate over the sidetrack. So certainly that that is not an uncommon proposition that sophisticated parties and railroad companies can have two potentially your honor so that's a cut more complicated situation but if there's only one operator under the 2001 agreement you know technically we were to have the choice as to whether to operator or not under that operator but if that's the only option that our perspective is we would have we would have the opportunity to use that sole option at cost and what we really believe that means is the port itself should not be able to benefit from forcing us to use another entity we're certainly not saying by any means it should be free because in that situation your honor we would be offloading our our costs to run that so those costs for whoever the third-party provider is we would certainly pay but the port should not be able to benefit from that and make a profit for example as like a surcharge because of what we negotiated helpful mr. Shawn I'm going to let you just go on with what absolutely that's what I'm here thank you very much of course that's what I'm here for so let me but let me just turn then to I think what the key issues are because your honor brings them up which is where these contracts I think one of the fundamental errors that the district court made was that in particular if you look at these two provisions that is the 2008 new storage track agreement and the 2001 settlement agreement that the provision that we're talking about the notwithstanding clause eradicates the entirety of the 2001 paragraph 5 because that deal is entirely with the lease and we believe that is a fundamental error and let me just walk you through that because I think that's where a lot of this stands and falls and I think before I before I do that just a quick background to kind of follow up what you're saying in night in the ninth late 1990s there were not a lot of tenants and so I put a quick map up here just I think it's always nice to have a geographical explanation but if you look at the very bottom and what's kind of the dark red or pink you see the soy G the CGB soybean plant and I should note that this is in your record at document 20 to the peel dock at page 15 now that for that plant we had a lease that's the 1996 and now 2006 lease that's for the demise of the specific real property on which the plant is placed that's it and then we had which is pretty common in any lease the ability to get cars and railroads and boats in and out so with the ingress and egress that was we thought sufficient in 1996 we believe that also includes storage storage is important because as we point out at page 9 of our brief we make about 3,000 tons of soybean per day there's three different products about 3,000 tons come out of it we can only start store but I mean 4,000 tons so there's there's an overlap by day two so the way storage works is simply we store about ten rail cars at a time you load them up you put them somewhere you go to another ten and then when the long run long line railroad ready to pick them up they go out to wherever they're going whether it's for feed whether it's for food and so we were doing that there was a dispute in 1996 we went to court in 1998 the Indiana Appellate Court said you don't have right to storage in your lease you have right to use the tracks for ingress and egress storage is a different issue we took that to heart in 2001 the parties engaged in the settlement agreement now that settlement is central here in paragraph 5 of that settlement agreement is is key in which we ie consolidated negotiated the right to have storage and in exchange for that quid pro quo we provided two pieces of consideration the pieces of consideration were first nine hundred thirty seven thousand dollars to build the tracks the second piece of consideration was we would in addition to building the tracks take care of all of the port tenants and their needs for storage as well as take care of the entirety of the trackage so if you look at the tracks all around we would maintain all of that trackage that is we would remove snow and one of the jokes they tell around is you know how do you remove snow from a railroad track with a shovel which is a lot in Indiana in the winter we had a team of people that would come out and shovel the snow that was at our cost we would maintain any you know any breakdowns on each tracks that need to be replaced that was something that we took on and that's articulated your honors in paragraph 7 of that agreement paragraph 7 of the 2001 settlement agreement says that as kind of that second part of consideration that the track use agreement requires consolidated to provide use services at the port so we were basically not only now as part in order to get storage required to pay money but required to take on the obligation of other people and the rest of the port through this ancillary secondary document the track use room now what I think is important and let me stop here for a minute is from the purposes of consolidated soybean plant the only contracts we needed were the lease and the settlement agreement the track use agreement is not necessary or germane to our our production and operation we run soybean that's the business we did not need the track use agreement that as I pointed out was consideration in addition to the money at the time of the 2001 settlement agreement is what you're saying you didn't need it at that point in time your honor is needed ever ever because the point of the track use agreement is to take care of the other tenants and so our our view is between the 1996 or now 2006 lease and the corresponding settlement agreement we have rights for ingress and egress of our cars we also now have storage rights that are provided in paragraph 5 of the 2001 settlement agreement the track use agreement is for service of others and maintenance of those of those tracks which we have continued to do until and through it expired I think in 2021 can I ask you just in the interest of time here I know you I know you put the not withstanding language do what is am I correct to take away from your brief what you're saying with the notwithstanding language is the notwithstanding language had the effect of eliminating terminating the lease that it refers to but it did not have the effect of eliminating use and access to the tracks is that that's the argument you're making yes correct judge and that and if you look at the the the details of the 2008 new storage tracks it explains why so so to kind of put that a little finer point on that our view is that the notwithstanding clause simply removes the conflicting real property interests that were conveyed in the 2001 settlement agreement that is if I may if I may switch these real quick if you look at that specific language this is paragraph 5 now of the 2001 settlement agreement there are a couple of components here that are real property specific the first just clearly is the land needed for the new track storage will be leased that now is different it's no longer a use a lease right it is a use right but of course there's a different right that's provided in here which is why we think the district court erred and it continues it says and so there's a conjunctive when completed consolidated use of the new storage track shall be at the cost of one dollar per year for the duration of consolidated tenancy at the port under the lease agreement here's what throws me off about your argument okay that would that would help me yes when you look at the language in paragraph 4 and the notwithstanding and you see there shall be no lease of the new storage tracks between port and consolidated green you say okay the lease is the lease looks like it's gone by virtue of the plain language of that but your position is that there's a use and lease an apartment in Indianapolis okay and the lease and and the lease is terminated it would make very little sense to me for the for the renter to then say oh I recognize the lease is terminated the apartment lease is terminated but I still have a right to access and use the apartment because the reason that that doesn't make any sense to me is you'd say the content of the lease is your right to access the tracks your right to use the tracks that's that's what the lease gave you and so when the lease is gone your right of access and use is gone why is that a wrong construction so let me let me start in the reverse before I get to a hypothetical it's a wrong construction here because of what we know from the documents themselves so for example in and of itself this language provides a separate right to use but more so than that take a look at the 2006 and 2001 track use agreements those agreements provide for usage of the tracks in certain contexts right we are allowed to use those yeah that the one expired though in June at the end of June of 21 right absolutely judge but what I'm saying is those were for the use of other parties not for us it was it gave us permission to go on the property to switch tracks and required as required for other entities so the just answer your point there is a history here of permitting use without a full on lease a lease has many different aspects to it so in your hypothetical you can lease an apartment and frankly do anything you want with it if that's what the lease says but you certainly could have a lease that says you have a lease to this property for solely for the purposes of habitating and not for starting a commercial business and so in these particular situations as you go throughout you can limit a lease and you can also enumerate certain rights that may or may not be granted and it could be part of a lease but it also could be just a use right or like a license and so that's really where what has happened here if you look closely at the language and if you look at the history so if you look at the 2008 new storage tracks agreement and this is at the record 100 dash 1 on page 2 the parties know what really happened so originally in 2001 there was a small sliver of land that was to be leased to consolidated for essentially consolidated primary use of storage we certainly had to be good neighbors but the idea was it was just us that changed so at page at page 2 it says the parties have agreed upon a new design and a new location for the new storage tracks new real estate they even call it and that's because as it says in the preceding page the port has grown in business and because Aventine renewable energy has now come on and they need storage too and consolidated certainly wasn't going to pay for Aventine to you know to do all of their work and to build tracks for storage for them and so the port came in said we'll split the cost but now we're going to need different land now the different land is because of this change in land and location which is identified in the top north so are you saying that after the 2008 agreement to construct new storage tracks the one you're talking about here that after that agreement was in place that it did not confer any rights on consolidated to use the tracks the use of the tracks your honor comes from the 2001 settlement agreement and the reason I say that is if you look at the 2006 storage the track storage agreement because I think what your might your honor might be getting to is the whole the providing however language that yeah exactly providing however but if you take a close look at the 2006 track use agreement and let me just flip to it here but if you look at the 2006 track use agreement which is what is being referred to here I think your honors referring to it it says at record 98-4 paragraph 6 which is on page 2 it says CGB shall not be permitted to use the sidetrack for storage of the rail cars what paragraph this is paragraph 6 document 98-4 on page 2 so this the reason that's critical your honor is because what this the new storage tracks contract is from I'm sorry that the track use agreement provides is maintenance and operation for others it does not provide storage in fact the only place that storage is permitted and granted to consolidated is in the 2001 settlement agreement paragraph 5 and quite frankly if if the ports position is correct that the notwithstanding clause eradicated that paragraph 5 then for the last 15 years we've been storing cars without permission because this particular contract this is another error by the court the district court said if we wanted to store tracks we needed to do it pursuant to the 2006 track use track use agreement but the track use agreement says in paragraph 6 storage is not part of the permissions here this is for maintenance service of other tenants storage is granted in paragraph 5 which really comes back to your question your honor as to how there could be separate different provisions well that's what it says we paid additional consideration of a dollar per year and it says for the expiration of the tenancy under the lease agreement if this were truly entirely just a lease paragraph 5 it would say under this lease but the drafter said under the lease agreement understanding that our additional new right for use for the dollar per year will be concomitant with our 2006 lease which goes till 2028 and so and there are other rights right so to go to another example if the port under the original circumstance where we had that small sliver of land which is primary for consolidated if the port wanted to have a third party it would need a sublease because that's what this language says we leased it there would be a sublease now in 2008 Aventine is here we're making a much larger storage facility in a separate area in order for Aventine to use it and the port to be able to sell that service service that frankly we're providing at its call at our cost it no longer needs our submission or sublease it can just do so and the only you know that the reservation for us is it can do so but we don't necessarily need to to use that okay you want to save a little time on rebuttal here I do okay we'll give you a little rebuttal a couple minutes of rebuttal time why don't we hear from mr. Hadley good morning thank you judge Scudder good morning your honors and may it please the court my name is vivid Kathy and I represent the defendant FLE the Indiana Port Commission and we ask that the judgment of the district court be affirmed consolidated has attempt attempted to frame this appeal around a single question of whether the 2008 agreement stripped it or robbed it of its previous rights and I'm happy to get to that point in a second because the district courts analysis was correct but I'd like to start with the more basic point which is that we do not believe consolidated ever had the rights and now claims to have under the contracts that existed before 2008 and to make that point I'd like to start with just three words that are in the relevant contracts and those words are use access and operate courts give contract terms they're plain and obvious meaning and in that spirit I'd like to offer the following example if someone asked me how I got to court today and I said I used the L train the plain and obvious meaning that that would convey is I paid for a ticket at the public price I boarded the train and the train took me to like my location the plain and obvious meaning of that would not be that I put my own rail car on the L train tracks and drove myself over the tracks the words that consolidated focuses on in paragraph 5 of the 2001 settlement agreement are the words use and access and the language is if the Commission contracts with a provider for rail services in place of consolidated rail services and I'll turn to that phrase in place of in a minute consolidated use of an access to the new storage tracks shall continue without interruption so those are the words use and access and in there this context they're plain and obvious meaning is revealed by the circumstances the plain and obvious meaning of the right to use and access storage is the right to store things that's what it means to use a storage track I don't know that you're gonna have the upper hand on that I thought the I thought you're much stronger argument is that language in paragraph 5 appear paragraph 5 by its term says consolidated lease of new storage tracks yes right and then the language that you just read from is in that paragraph yes okay and then when you get to the 2008 new storage track agreement the lease itself is terminated that's correct okay and at least they're talking about is the lease in paragraph 5 of the 2001 settlement agreement that's just from the plain language paragraph 4 yes I absolutely agree with that and that's that was the base so it's almost like you just whatever lease is conferred in paragraph 5 the notwithstanding language seems take seems to say take your pencil and take an X and write an X through it yes gone I absolutely agree with all of that your honor and you know that was the basis of the district court's decision and we fully agree with that the one point to make about paragraph 5 is it's discussing new storage tracks that were never actually built so in that 2001 settlement agreement there is a definition of new storage tracks and it's specific to a design in a location that the parties had agreed upon that was made after consultation with an engineering firm those tracks do not exist they have never existed they thought those guys spent I thought consolidate spent about a million bucks that's even something they did your honor that so in the 2008 agreement what they said is we no longer want to build those tracks in the location and with the design that we previously decided on we're going to put them in a completely different location and so the 2001 settlement agreement at the time they are contemplating storage tracks that were it's contemplating a lease that never was implemented over storage tracks that were never built they were built in a different location at the time they agreed to build them at a different location they said there is no yeah but they did all that what's odd about what you're saying time doesn't stand still yes so so all all you're saying with that is whatever was thought of or whatever was envisioned in 2001 had changed by 2008 okay fine correct things change over time but they entered into it there's a new contract that's entered into I agree I'm simply trying to provide the context for why in 2008 what they previously would have agreed to in 2001 was there were changed circumstances and they no longer agreed to that and as your honor pointed out that the language of the 2008 agreement says notwithstanding paragraph 5 of the settlement agreement there shall be no and you know the district court found and I think it's absolutely correct basically every sentence in paragraph 5 is premised on there being a lease so the first sense it talks about leasing the land needed to construct the new storage tracks that never occurred because they're replaced on different land it then talks about the requirements that shall be in the lease for example consolidated must allow tenants and other authorized rail users to use the new storage tracks that's a provision that would have been in this lease that's what this language says the very next sentence says such use referring to the tenants use under the lease of the new storage or the storage track and in fact in paragraph 5 there is a defined term quote storage track lease it with quotation marks and with capital letters capital S capital T capital L and it's referred to from the beginning and it's referred to through the end I mean be the last couple lines says if consolidated denies access to another tenant that's a breach of the storage track lease after the 2008 agreement was executed did consolidated as a matter of fact maintain access to and use of of the new tracks that were put in they did your honor and and even more important okay so here's my question as a matter of fact that seems clear from the brief state I mean they have this gigantic plant it's really important to their business absolutely they were going to maintain access to the tracks they can't run the business without the tracks yes okay my question is this if they did after the execution of the 2008 agreement maintain access and use of the new tracks what was that pursuant to was it pursuant to that their agreement paragraph 5 or was it pursuant to a track use agreement it was pursuant to a couple of things first it it was pursuant to the track use agreement and the point that I wanted to distinguish in the words use access and operation what consolidated has sought through this lawsuit in our view is the right to operate over the tracks and that right only comes from one place and that is the track use agreements first entered into in 2001 and then updated in 2000 okay what mr. Shaw said a few minutes ago is that in his view the track use agreement has nothing to do with consolidated own access and use of the tracks I wouldn't necessarily dispute that your honor I would only point out that's the only place where they're allowed to operate over the says is that consolidated agrees that its use of the railroad tracks shall be subject to the operator of the railroad tracks and so they can use the tracks but that use is subject to the operator that means the person actually driving the rail cars around the port that so in your view were they after the 2008 agreement were they getting access to the tracks and operational use of the result of something conferred in the 2008 new storage track agreement no they were operating pursuant to the 2006 track use agreement that's the one that expired in June 2021 and their access to the rail track use agreement okay yes and you'd say that and that makes sense because that's the direction that was supplied by the provided however for like provided however language in correct yes and and I'd like to focus in on that language because you know under consolidated's reading that first section in the 2008 agreement the paragraph 4 about notwithstanding paragraph 5 there shall be no lease consolidated has taken that to mean you know there was just a minor pluck one right was plucked out of paragraph 5 but if that were correct I don't see any reason why the parties would need to have the follow-up sentence which says provided however the new storage tracks shall be included within and subject to the track use agreement the only reason that would be necessary is if what had just happened in the previous sentence was not a minor change within paragraph 5 but rather was a major change that would call into question whether anything in the settlement agreement still applied and that's the only reason the parties we need to say provided however we need to be clear paragraph 7 still applies there there is one thing so that's what you're pointing to the track use agreement is the is the source of contractual authority that allowed them after the execution of the 2008 agreement to access use operate on the tracks certainly the word operate I believe they do still have the right to access under their lease and the right to access under the lease is section 13 0 3 and that language provides not that they will have continual non-stop uninterrupted unfettered access rather that provision provides that the port will make reasonable efforts to provide access to the railroad tracks at the port and then crucially it says the Commission does not guarantee rail service to the port and or the lease premises but that's the more limited access right they had they have the right for us to provide them access and we do that through the operator their use is subject to the operator and the access is just reasonable access which there's been no allegation that they've been denied reasonable access and we do not guarantee complete and total perfect access so those are the provisions that remain in effect there's one thing that I like to respond to from the opening argument there was a statement about you use agreement that was sort of our beneficence we just wanted to help the other tenants at the port I think that's belied by the record because the previous litigation I would submit is incorporated by reference into the pleading because it's cited in there and the previous litigation before the Indiana Court of Appeals makes clear that the railroad service at that time the service to and inside of Southwind is provided by CSX transport in other words prior to 2001 CSX transport provided the railroad service at the port the only right that consolidated had to operate over the railroad tracks thereafter was created in the 2001 track use agreement and there's one there's one point that I'd like to zoom in on because I think it's emblematic of the case there's a statement on page 11 of their brief where they're just describing paragraph 5 of the settlement and they say that it provides them quote the assurance that consolidated shall have the continued right to operate over the ports railroad tracks even if POI selects a third-party service provider the right to continued operation over the railroad tracks is absolutely not in paragraph 5 and it has never been in paragraph 5 there are contracts in the case that discussed the right to operate over again those are the two track use agreements and those expired but what consolidated has attempted to do is so paragraph 13 of the track use agreement you said earlier repair paragraph 13.03 of the lease is what gives them reasonable rail access throughout the that we have been providing through the operator section 3.03 of the lease is what says their use of the railroad facilities is then subject to that operator but the statement on page 11 you know that we have the right to operate over the ports railroad tracks the reason I wanted to highlight that is I think it's emblematic of what consolidated has asked this court to do and what it asked the district court to do before which is they've asked the take the sentence that we can have use and access to new storage tracks and they want the court to substitute use and access with operate over and they want the court to substitute new storage tracks with all of the ports railroad tracks but it's a well settled matter of Indiana contract law that courts cannot rewrite contracts in that manner and the pair and the lease agreement that you were just pointing us to paragraph 1302 and what other paragraph there are two paragraphs in there's 3.03 and there's 13.03 so 3.03 does a couple of things it establishes that they will pay the port tariff it says that the port tariff applies to all of the facilities at the port including explicitly the railroad tracks at the port and it says that consolidated use of the railroad facilities is subject to the operator thereof and just to kind of tie in the track use agreement when the track use agreement was in place consolidated was the operator and therefore its use was subject only to itself that right to operate expired and every contract says we can bring in a new operator and so now their use of those tracks is subject to the operator the second one that's in the lease is paragraph 13.03 and that provides the extent to which we have to provide them rail access and that says that we will provide them reasonable rail access but that we do not guarantee rail service throughout the port I see that I'm short on time and I do want to emphasize a couple of other things we've made a harmless error analysis or a harmless error argument in our briefing you know that there was a preliminary injunction hearing and we agree with the district court that of course it cannot consider testimony adduced at that time for purposes of ruling on the rule 12 motion and so that testimony is not directly relevant but I do think it's relevant on a harmless and error analysis because at that hearing the undisputed testimony from consolidated representative is that they just came to the conclusion that they would be expired in April or May of 2021 which perhaps coincidentally was just about a month before the track use agreement was set to expire and you know it's a basic matter of black letter contract law that contracts are interpreted according to the intent at the time they're entered into and so right now if this court were to remand the undisputed testimony is that consolidated just came up with this after the expiration of the agreements they just came up with that a couple months before filing suit is the 2006 lease agreement still in effect the lease is yes it will be in effect through 2028 and I believe there's an option for consolidated to re-up if they would like to but yes it's it's been in a half left we do have extensive waiver arguments in our briefs you know that one of the central arguments that consolidated has made on appeal is that district court erred because these contracts are ambiguous and therefore there should have been evidence in every submission to the district court consolidated argued the opposite they argued that these contracts are clear unequivocal unambiguous they said that on the first day of the case in their preliminary briefing they said that in their final briefing to the court in their response in opposition to our motion to dismiss and there also they said that their rights are clear and unambiguous under the lease and they said that their rights are clear and unambiguous under the 2001 settlement agreement so we think that that would be clear invited error if there's any error that would extinguish the possibility of appellate review I have about 30 seconds left if there are happy to take any other questions but otherwise thank you for your time I want I have one it surprises me to hear you distinguishing to the to the fine degree that you are between access and access right and an operational right I didn't take any of that away from your brief so when you say that the settlement that paragraph five of that settlement agreement does not speak to the right to operate on the tracks right correct yes it paragraph five does not speak to that where where does the operational right come from over time and I see my you can answer okay thank you judge the right in what agreement is in all is and is only in the track use agreements so the track use agreements in paragraph one they say that consolidated shall have the right to operate over the sidetrack which means the railroad tracks at the board that that's where the right okay and you're the point you're making is that okay it's in the track use agreements the problem that the plaintiff has is that the track use agreement expired correct yes okay and when the track use agreement expired their right to operate necessarily on the tracks expired correct okay and if they don't have a right a contractual right to operate on the tracks it's not conferred by anything that's left anywhere in the settlement agreement is the point you're making yes judge okay okay we thank you very much we ask that the district court be affirmed okay very well thank you sure good morning again your honors may I proceed yes a couple points I'd like to cover I think the first maybe perhaps most important in your honor judge Scudder had said this time time does not stand still so I'm a little confused by the notion that the operational right would have come from the track use agreement because as we know those agreements were not in place until 2001 to start we've been operating over this track since the 1990s and in the 19 in 1998 the Indiana appellate court had said we have the right to operate over the tracks we just don't have storage so to somehow suggest that that right did not exist until 2001 it's a bit confusing but but I think where we're getting a little tied up is this language here and I think your honor when you were talking and pointed something out that I think is really important and plaintiffs defendant's counsel kind of suggested this which is there was new land and what was contemplated in 2001 because time doesn't stand still is that the original land would be leased it says shall be leased this is not in itself a lease the idea was when they when they finally get to the point after 2001 to build the original designated tracks there would be a lease that would be consistent with what was happening in 2008 because things changed the only thing that changed was there's no longer going to be a lease because it's now new real estate as the 2008 news storage tracks agreement says that's why the drafters used notwithstanding it could have been very easy for them to just say paragraph 5 is now stricken but instead they said notwithstanding paragraph 5 there will be no lease and the idea is well in 2001 we said we're going to get into a lease agreement we're not going to have a there's just not another lease because we're on new real estate new grounds and I think it's a practical matter because I think your honor brought this up as well let's put ourselves in 2008 we've now promised in 2001 a million dollars we've promised to maintain the tracks since the 2001 for everybody else including the port and service everybody else and in 2008 we're asked to do more so we're asked now will you please also maintain this new enlarged storage track at the real estate on this new real estate we agree what did we get for that bargain according to the defendant a Peli here nothing we in fact got the opportunity for them to pull the rug out underneath us at any time well that just doesn't make sense though no I think what he's saying is I think what he's saying is you did get something you put a million in it I'm just rounding off okay you put money put real money in it and then you got whatever rights you negotiated in the track use agreement pursuant to that provided however for language but the track use agreement by its own language as set forth in paragraph 7 of the 2001 settlement agreement is for services of others at the track and that's where I was bringing you back to if you look at the track use agreement and its intent it is specifically and it says out right at the beginning it says CGB this is services it's paragraph 1 of this is 98 for in the 2006 tracks you can track use agreement says CGB shall provide cost-effective full service rail operations for all tenants and other rail users of the sidetrack you know by the way judge it also says subject to the existing rights of the Evansville Western Railroad and I think that goes to judge ripples question about more than one provider certainly even this contract suggests there can be more than one provider but the idea here as set in the very document and paragraph 7 of the settlement agreement and that's why it didn't come until 2001 was that the port didn't want to maintain and take on the cost for removing snow and debris etc and so therefore we were we were the ones who consolidated it was the one who took that on and that's that's clear in both the 2001 and 2006 track use agreement we're happy if those go away well we're here to talk about is the rights that we negotiate in exchange for those in exchange for those sums your honor and and I think you know what I'd like to end with is the defendants here presented a whole new class of interpretations and where we are it's at a motion to dismiss stage and you know what I'd like to I'd hope that we presented a plausible I think we did a very plausible interpretation that's all we needed to do to meet the motion to dismiss standard if any of the the defendants new kind of interpretations today hold hold any weight with with your honors then we should go back do discovery and come back here we shouldn't have to have that call at a motion dismiss each here because what they're asking for is perfection and this is the agricultural business and what the what the motion does dismiss standard requires is just plausibility and we think we've more than far than met that if your honors if you have any other questions I'm happy to answer them but otherwise I address okay mr. Shaw thanks to you mr. Hadley thank you we'll move to our